## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALS CAPITAL VENTURES, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, and J ROSENBERG DISTRIBUTION TRUST, BY AND THROUGH ITS TRUSTEE, MOSHE GLATZER,<br><br>　　　　　　　　　　Defendants. | Docket No.　18-cv-4551<br><br><br>**COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ALS Capital Ventures, LLC (the "Plaintiff"), by its attorneys, Paneth & O'Mahony, PLLC, for its Complaint against defendants Lincoln Life & Annuity Company of New York ("Lincoln Life") and the J Rosenberg Distribution Trust, by and through its Trustee, Moshe Glatzer, alleges as follows:

### INTRODUCTION

1.　　This action arises from the unlawful conduct of Lincoln Life who, after collecting more than $3,500,000 in premium payments on account of Plaintiff's $8,500,000 life insurance policy over a period of more than eight years, has, *inter alia*: (a) failed to pay Plaintiff the proceeds of the death benefit which was and remains rightfully due and owing to Plaintiff following the insured's death, pursuant to the terms of the policy; (b) purported to lapse the policy without providing proper and/or timely notice to Plaintiff in advance of the alleged lapse, in violation of the express terms of the policy and in violation of state law; (c) failed to advise Plaintiff of the premium payment due in order to prevent the policy from lapsing; (d) purported

to have sent notices to Plaintiff's old address, after being notified by Plaintiff that it relocated its offices; (e) purported to have sent notices to Plaintiff which were returned as undeliverable before the policy lapsed, following which Lincoln Life failed to make any effort at all to resend the notices, or to contact Plaintiff; (f) failed to notify Plaintiff of a potential lapse when Plaintiff called Lincoln Life to discuss the Policy, which call occurred after Lincoln Life contends Plaintiff's premium payment was already past-due, but at which time the policy was still in the grace period; (g) commenced the grace period on a date when no premium payment was actually due; (h) failed to afford Plaintiff the benefits of the "Coverage Protection Guarantee" provisions of the policy; and (i) improperly terminated the policy based on claims that the policy lapsed due to non-payment of premiums.

2.      Lincoln Life's attempt to terminate Plaintiff's life insurance policy was invalid due to Lincoln Life's failure to satisfy conditions precedent to the lapse of a life insurance policy, and to otherwise act in accordance with the terms of its own life insurance policy, as well as applicable state law.

3.      In addition, upon information and belief, Lincoln Life's improper conduct was willful, deceptive, and materially misleading, caused Plaintiff to suffer actual damages, and was part of a company-wide scheme to improperly cause the lapse of numerous life insurance policies with large benefit amounts.

4.      Accordingly, in this action, Plaintiff seeks a declaration that the policy was in full force and effect as of the date of the insured's death, and that Lincoln Life's denial of coverage is null and void.  Plaintiff further seeks compensatory damages, punitive damages, attorneys' fees and other costs and expenses associated with this action, together with interest, and any further relief that the Court deems just and proper.

## THE PARTIES

5.      Plaintiff ALS Capital Ventures, LLC is a limited liability company duly organized and existing under the laws of the State of Delaware and maintains its principal place of business in New York.

6.      Plaintiff is the sole owner and an 84% beneficiary of the life insurance policy which is the subject of this action.

7.      Upon information and belief, defendant Lincoln Life & Annuity Company of New York is a life insurance company organized and existing under the laws of the State of New York.

8.      Upon information and belief, defendant the J Rosenberg Distribution Trust is a trust duly organized and existing under the laws of the State of New York.

9.      Upon information and belief, at all relevant times, the trustee of the J Rosenberg Distribution Trust was and remains Moshe Glatzer.

10.      Upon information and belief, at all relevant times, Moshe Glatzer was and remains an individual residing in New York.

11.      Defendant the J Rosenberg Distribution Trust is a 16% beneficiary of the life insurance policy which is the subject of this action.

## THE RECEIVERSHIP

12.      On December 19, 2016, this Court (the "Receivership Court"), in the matter of United States Securities and Exchange Commission et. al. v. Platinum Management (NY) LLC et. al., Docket No. 16-cv-06848 (BMC), entered an Order Appointing Receiver, pursuant to

which Bart M. Schwartz was appointed receiver of certain entities commonly referred to as Platinum Partners, including Platinum Partners Credit Opportunities Master Fund LP.

13.     On July 6, 2017, Melanie L. Cyganowski (the "Receiver") replaced Bart M. Schwartz as receiver.

14.     The Receiver is administering the receivership estate pursuant to an October 16, 2017 Order (the "Receivership Order") of the Receivership Court.

15.     The Receivership Order amended the December 19, 2016 Order Appointing Receiver.

16.     The Receivership Order contains provisions directing the Receiver to, among other things:

> a.     Take custody, control and possession of all Receivership Property;
>
> b.     Manage, control, operate and maintain the Receivership Entities and hold in the receiver's possession, custody and control all Receivership Property;
>
> c.     Take such action as necessary and appropriate for the preservation of Receivership Property; and
>
> d.     Pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate.

17.     The Receivership Order defines "Receivership Property" to include "all property interests of the Receivership Entities … of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly."

18.     Platinum Partners Credit Opportunities Master Fund LP wholly owns Credit Strategies, LLC.

19.     Credit Strategies, LLC is the Managing Member of Plaintiff.

20.     Plaintiff's assets, including its rights and claims, are therefore Receivership Property as defined by the Receivership Order.

21.     The Receivership Order also prohibits any party from directly or indirectly taking any action or causing any action to be taken that would:

a.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property;

b.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of her duties; or

c.      Dissipate or otherwise diminish the value of any Receivership Property; which includes asserting claims against any Receivership Property or any Receivership Entities.

22.     The life insurance policy which is the subject of this action is Receivership Property as defined by the Receivership Order.

23.     Accordingly, this action is brought by Plaintiff, through the Receiver for its managing member, Platinum Partners Credit Opportunities Master Fund LP, to recover Receivership Property which the Receiver is entitled to pursuant to the terms of the subject life insurance policy.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this action is brought by a receiver to collect receivership property in accordance with the Receivership Order, and is therefore ancillary to the Receivership Action.

25.     Specifically, Paragraph 1 of the Receivership Order provides that "[t]his Court continues to take exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities (the "Receivership Assets")."

26.     This Court has personal jurisdiction over Lincoln Life because, upon information and belief, defendant Lincoln Life & Annuity Company of New York is a life insurance company organized and existing under the laws of the state of New York.

27.     This Court also has personal jurisdiction over Lincoln Life because, upon information and belief, Lincoln Life solicited, issued, delivered, and accepted premium payments for the subject life insurance policy in the state of New York.

28.     Venue is proper in the Eastern District of New York because this matter is ancillary to the Receivership Action currently pending in the United States District Court for the Eastern District of New York.

29.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in the Eastern District of New York.

## FACTS COMMON TO ALL CLAIMS

### The Policy

30.     On or about June 18, 2008, Lincoln Life issued life insurance policy number LJ-7022534 (the "Policy"), insuring the life of Jeno Rosenberg (the "Insured").

31.     Upon information and belief, at all relevant times the Insured resided in Brooklyn, New York.

32.     Upon information and belief, the application for the Policy was completed and signed in Brooklyn, New York.

33.     Upon information and belief, Lincoln Life's medical examination of the Insured in connection with the application for the Policy was performed in Brooklyn, New York.

34.     Upon information and belief, the Policy was solicited and sold by a Lincoln Life agent who maintained his offices in Brooklyn, New York.

35.     Upon information and belief, at the time the Policy was issued, the owner and beneficiary of the Policy was the J Rosenberg Jackson Ave Irrevocable Life Insurance Trust.

36.     Upon information and belief, the J Rosenberg Jackson Ave Irrevocable Life Insurance Trust was a trust that was duly organized and existing under the laws of the state of New York, and its trustee was, at all relevant times, a resident of the state of the New York.

37.     Upon information and belief, upon issuance of the Policy, the Policy was delivered to the J Rosenberg Jackson Ave Irrevocable Life Insurance Trust in the State of New York.

38.     Upon information and belief, on or about March 22, 2011, Lincoln Life approved the J Rosenberg Jackson Ave Irrevocable Life Insurance Trust's transfer of ownership of the Policy to Absolute Life Solutions, Inc., a Nevada corporation with its principal place of business in New York.

39.     Following the March 2011 transfer, Absolute Life Solutions, Inc., was the sole owner of the Policy.

40.     Upon information and belief, following the March 2011 transfer, Absolute Life Solutions, Inc., was an 84% beneficiary of the Policy, and the J Rosenberg Distribution Trust was a 16% beneficiary of the Policy.

41.     Thereafter, in or about 2013, Lincoln Life approved Absolute Life Solutions, Inc.'s transfer of ownership of the Policy to Plaintiff (the "2013 Transfer").

42.     Following the 2013 Transfer, and at all times since, Plaintiff was and remains the sole owner of the Policy.

43.     Following the 2013 Transfer, and at all times since, Plaintiff was and remains an 84% beneficiary of the Policy, and the J Rosenberg Distribution Trust was and remains a 16% beneficiary of the Policy.

**Lincoln Life's Unlawful Attempt to Cause the Policy to Lapse**

44.     Pursuant to the terms of the Policy, upon the death of the Insured, Lincoln Life must pay Plaintiff 84% of the $8,500,000 death benefit.

45.     Since the date the Policy was issued, Plaintiff and its predecessors in interest paid all premiums as required pursuant to the terms and conditions of the Policy, which totaled in excess of $3,500,000.

46.     Nonetheless, in or about April 2017, Plaintiff learned of Lincoln Life's contention that on March 15, 2017, the Policy had purportedly lapsed due to an alleged failure to pay a premium due on January 11, 2017, or within the 61-day grace period thereafter.

47.     The Policy is a "Flexible Premium Adjustable Life Insurance Policy", also referred to as a "Universal Life Insurance Policy."  Accordingly, the payments required to maintain the Policy in force vary from month to month, and Plaintiff had the option to suspend

the payment of premiums, allowing premiums to be paid from the Policy's "cash account," so long as the cash account value was sufficient to cover the minimum monthly premium deduction.

48.     Nonetheless, the Policy does not specify the actual minimum premium amount that was required to be paid for any time period or duration.

49.     The Policy also does not provide a formula which Plaintiff could have utilized to determine the minimum monthly payment or deduction amount without additional information from Lincoln Life, such as the Cost of Insurance rates – the largest component of the monthly premium – that were in effect during the relevant time periods.

50.     The Policy does not specify the Cost of Insurance rates that would be applied at any time period and, in fact, does not even specify how the rate will be determined.  Instead, in the Policy, Lincoln Life stated that:

> **Monthly Cost of Insurance and Expense Charges.** These charges are assessed against Your Policy Value to cover the company's cost of insurance and other expenses. These charges will be detailed in Your annual Statement of Account. We can change these charges based on certain contractually identified factors subject to the maximum guaranteed factors shown in Your policy.
>
> * * *
>
> **Cost of Insurance** The cost of insurance for the month equals the cost of insurance rate for the month times the net amount at risk for the month. The net amount at risk for the Policy Value calculation is computed as (1) minus (2) where:
>
> (1) is the death benefit for the month before reduction for any Debt, discounted to the beginning of the month at the guaranteed interest rate.
> (2) is the Policy Value at Monthly Anniversary Day.
>
> For months in which Death Benefit Option I is in effect, for the purpose of allocating the cost of insurance between different parts of the Specified Amount, the Policy Value will be considered as part of the Initial Specified Amount. If such value exceeds the

Initial Specified Amount, any excess will be considered part of the earliest addition to the Specified Amount. This allocation will continue in order of all additions to the Specified Amount until all value is allocated.

**Cost of Insurance Rates** The monthly cost of insurance rates are determined by Us. Monthly cost of insurance rates will be determined by Us based upon future expectations as to investment earnings, mortality experience, persistency, expenses, taxes, capital and reserve requirements, and on rules and standards on file with the Insurance Department of the state is which this policy is delivered.

Part of the cost of insurance charge is used to cover acquisition expenses arising from the issuance of the policy. The expense recovery component is higher in early Policy Years. The table of guaranteed maximum cost of insurance rates is shown on the policy specifications page. We may use rates lower than these guaranteed maximum rates. We will never use higher rates.

\* \* \*

**Changes in Rates** At Our sole discretion, We may change the monthly cost of insurance rates or excess interest rate at any time. We will base any change on Our future expectations as to investment earnings, mortality experience, persistency, expenses, taxes, and capital and reserve requirements.

51.     Although Lincoln Life applied new Cost of Insurance rates at each Policy anniversary, Lincoln Life failed to advise Plaintiff (or any of its policy owners) of those new rates until a year later, when an Annual Statement was generated at the end of that Policy year.

52.     By the time that Lincoln Life generated and sent Plaintiff those Annual Statements at the end of the year, premium payments for each month during the preceding year were already due and if Plaintiff failed to properly "guess" as to how much it was required to pay, or as to the minimum cash value that it was required to maintain in order to sustain the Policy, the Policy would have already lapsed.

53.     By way of example, in this case Lincoln Life implemented a new Cost of Insurance rate for this Policy on July 11, 2016.

54.     Lincoln Life did not notify Plaintiff (or any of its policy owners) of the new rate at that time and, instead, did not intend to do so until a full year later.

55.     Lincoln Life sent Plaintiff an Annual Statement on or about that same date, July 11, 2016, but the Annual Statement only contained the Cost of Insurance charges that were deducted the year prior, and failed to disclose the new Cost of Insurance rates or charges that were already in effect at the time the Annual Statement was generated, and which Plaintiff was going to be charged for the next twelve months.

56.     As such, Plaintiff was left to guess what the Cost of Insurance rates and charges were for July 2016 through March 2017, and would not have known the applicable rate until the next Annual Statement was generated on July 11, 2017 – six months after Lincoln Life contends that the Policy's cash value was insufficient to cover the monthly deduction, purportedly causing the Policy to lapse.

57.     Lincoln Life's standard practices and procedures with respect to Flexible Premium Adjustable Life Insurance Policies, such as the one owned by Plaintiff, are severely deficient, in that Lincoln Life's policy owners are unable to determine the date upon which additional premium payments are due, the actual amount required to be paid by that unknown date in order to prevent the lapse of their policies, or whether their policies have entered the grace period and are in danger of lapsing.

58.     Until an Annual Statement is generated at the end of a policy year, Lincoln Life refuses to provide its policy owners with the applicable Cost of Insurance rates.  Accordingly, Lincoln Life's policy owners, such as Plaintiff, are forced to wait until they receive a lapse

warning notice (commonly referred to as a "grace notice"), notifying them that the policy's cash value was insufficient to cover the monthly premium deduction, that the policy has entered the grace period, and that the policy will lapse if a premium payment is not made.

59.     New York Insurance Law § 3211(a)(1) provides that:

> No policy of life insurance or non cancellable disability insurance delivered or issued for delivery in this state... shall terminate or lapse by reason of default in payment of any premium... in less than one year after such default, unless... a notice shall have been duly mailed... for life insurance policies in which the amount and frequency of premiums may vary, no earlier than and within thirty days after the day when the insurer determines that the net cash surrender value under the policy is insufficient to pay the total charges that are necessary to keep the policy in force.

60.     Similarly, the Policy provides that:

> A grace period of sixty-one (61) days from the date that the policy enters the grace period will be allowed for the payment of the minimum amount needed to continue the policy. If the Coverage Protection Guarantee is in effect, the grace period will not begin and this policy will not be subject to termination under this provision. We will send You and any assignee of record a written notice of the minimum amount due at least fifteen (15) days but not more than forty-five (45) days prior to the date of default.

61.     Pursuant to N.Y. Ins. § 3211(b), the notice must contain, *inter alia*, the minimum premium amount required to be paid in order to prevent the policy from lapsing.

62.     Pursuant to N.Y. Ins. § 3211(a), where an insurer fails to comply with these notice requirements, any purported lapse of the policy is invalid, and the policy remains in force for one year from the date of the payment default.

63.     In this case, Lincoln Life failed to comply with its obligation, under the express terms of the Policy and pursuant to New York law, to send Plaintiff a valid and timely grace notice in advance of its purported lapse of the Policy.

64.     Instead, after the purported lapse of the Policy, Lincoln Life informed Plaintiff of its contention that the Policy lapsed due to an alleged failure to pay the premium.

65.     Although Lincoln Life failed to comply with its obligation to send Plaintiff a grace notice in advance of the purported lapse, after the purported lapse Lincoln Life provided Plaintiff copies of notices dated January 11, 2017 and February 11, 2017, which Lincoln Life claims it sent Plaintiff in advance of the lapse.

66.     Although Plaintiff did not receive those notices in advance of the purported lapse, Lincoln Life claims that by way of those notices, it advised Plaintiff that the Policy would lapse unless Plaintiff paid $72,534.92 on or before March 15, 2017.

67.     The notices indicate that Lincoln Life purportedly mailed them to Plaintiff at 152 West 57th Street, 54th FL, New York, New York 10019.

68.     In or about February 2017 – at which time Lincoln Life contends Plaintiff's premium payment was already past-due, but at which time the Policy was still in the grace period – Plaintiff called Lincoln Life and advised Lincoln Life that Plaintiff's offices had been relocated.   Nonetheless, Lincoln Life failed to advise Plaintiff during that telephone call (or otherwise) that a premium payment was past due, that the Policy was in the grace period, or that the Policy was in danger of lapsing.

69.     Lincoln Life has since claimed that it mailed the January 11, 2017 and February 11, 2017 notices to Plaintiff's former office, but that both of those notices were returned to Lincoln Life as undeliverable by the United States Postal Service.

70.     Lincoln Life had Plaintiff's telephone number.

71.     Lincoln Life had Plaintiff's fax number.

72.     Upon information and belief, Lincoln Life had the email address of one or more of Plaintiff's employees.

73.     Nonetheless, after Lincoln Life was notified by both Plaintiff and the United States Postal Service that Plaintiff's offices had been relocated, Lincoln Life failed to make any effort to resend the notices, to contact Plaintiff by telephone, fax, or email to notify Plaintiff that the Policy would lapse absent a premium payment, or to notify Plaintiff of same when Plaintiff called Lincoln Life to discuss the Policy in February 2017.

74.     As of January 11, 2017, the date when Lincoln Life alleges the Policy entered the grace period, the cash value of the Policy was sufficient to cover the monthly premium deductions and other charges that were due as of that date.  Accordingly, the Policy should not have entered the grace period on January 11, 2017.

75.     Plaintiff did not receive the January 11, 2017 or February 11, 2017 grace notices in advance of the purported lapse, and maintains that Lincoln Life never mailed them to Plaintiff.

76.     In addition, even if Lincoln Life had sent Plaintiff the January 11, 2017 and February 11, 2017 grace notices, the grace notices were null and void, *inter alia*, because they failed to advise Plaintiff of the minimum premium payment that Plaintiff was required to pay in order to prevent the Policy from lapsing, were sent to the wrong address, and/or were not mailed timely.

77.     Accordingly, pursuant to the express terms of the Policy, as well as New York Insurance Law § 3211, even if the Policy had entered the grace period on January 11, 2017, Lincoln Life's purported lapse of the Policy was null and void, and the Policy remained in full force and effect at the time of the Insured's death.

78.     On December 20, 2017, during the period within which the Policy was in full force and effect, the Insured died.

79.     Nonetheless, to date, Lincoln Life has failed to pay the death benefit to Plaintiff, in violation of the terms of the Policy.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

80.     Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the Complaint with the same force and effect as if set forth herein.

81.     Lincoln Life commenced the grace period prematurely, notwithstanding the fact that the Policy's cash value, together with the premium payments made by Plaintiff at that time, were sufficient to cover the premium due on the date that the Policy allegedly entered the grace period.

82.     Lincoln Life failed to afford Plaintiff the benefits of the Policy's "Coverage Protection Guarantee" provision.

83.     Lincoln Life improperly failed to provide Plaintiff with adequate, proper, and/or timely notice prior to its alleged lapse of the Policy, in violation of the express terms of the Policy, as well as the laws of this State.

84.     Lincoln Life failed to credit Plaintiff for the premium payments which were made.

85.     Lincoln Life's purported termination of the Policy was in violation of the Receivership Order.

86.     Lincoln Life should be estopped from claiming that the Policy was cancelled or terminated.

87.     Lincoln Life waived its right to cancel or terminate the Policy.

88.     Lincoln Life's attempt to cancel or terminate the Policy is null and void.

89.     Plaintiff has offered, and remains ready, willing, and able to pay all premiums due for the Policy, but Lincoln Life refuses to acknowledge the validity of the Policy.

90.     As such, Plaintiff is entitled to a judgment from this Court declaring that the Policy was in full force and effect as of the date of the Insured's death, and that Lincoln Life's denial of coverage is null and void.

91.     Plaintiff further seeks a declaratory judgment that it may return to this Court, upon motion, to seek further declaratory relief if it becomes necessary.

92.     Plaintiff has no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

93.     Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the Complaint with the same force and effect as if set forth herein.

94.     Pursuant to the terms and conditions of the Policy, upon the death of the Insured, Lincoln Life was required to pay 84% of the $8,500,000 proceeds of the Policy to Plaintiff, together with all accrued interest.

95.     The Insured passed away on December 20, 2017, during which time the Policy was in full force and effect.

96.     To date, Lincoln Life has failed to pay Plaintiff the proceeds of the Policy.

97.     Lincoln Life has breached its contract with Plaintiff.

98.     As a result of the aforementioned breach by Lincoln Life, Plaintiff has been damaged in a sum to be determined by the trier of fact after trial, but not less than the sum of $7,140,000, together with all accrued interest, and for consequential losses which Plaintiff suffered as a result of Lincoln Life's breach.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Deceptive Acts and Practices - NY GBL § 349)

99.    Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the Complaint with the same force and effect as if set forth herein.

100.    In accordance with its standard practices and procedures, and in accordance with the terms of the Policy and applicable state law, before lapsing a life insurance policy, Lincoln Life is required to send each policy owner a grace period notice advising the policy owner, *inter alia*, that the policy has entered the grace period and is in danger of lapsing.

101.    Upon information and belief, over the last several years, Lincoln Life has devised a broad and extensive company-wide scheme, in an effort to cause the improper lapse of numerous life insurance policies.

102.    Upon information and belief, in furtherance of this improper scheme, Lincoln Life has intentionally commenced its policy owners' grace periods prematurely, failed to provide policy owners with the true and proper premium payment due in order to prevent the lapse of their policies, failed to send policy owners the required grace notices, advised policy owners that their grace periods were shorter than what was required by the policies and by state law, sent policy owners grace notices that were unclear, confusing, and ambiguous, failed to send policy owners Annual Statements, and refused to acknowledge timely receipt of premium payments.

103.    Lincoln Life's actions are in violation of the express terms of Lincoln Life's life insurance policies, such as the one at issue in this case, as well as applicable state law.

104.    Lincoln Life's unlawful actions deprive its policy owners, such as Plaintiff, of the policy benefits for which they bargained for and paid.

105.    Lincoln Life's conduct in this regard has directly resulted in the alleged lapse of many of Lincoln Life's life insurance policies, including the Policy owned by Plaintiff.

106.    Lincoln Life's conduct involved a transaction that occurred in New York.

107.    Lincoln Life's conduct was deceptive.

108.    Lincoln Life's conduct was part of a broad and extensive company-wide scheme that also impacted, and continues to impact, many of Lincoln Life's other consumers.

109.    As a direct, foreseeable and proximate result of Lincoln Life's unlawful conduct, Plaintiff has suffered, and continues to suffer, actual damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Breach of the Implied Covenants of Good Faith and Fair Dealing)**

110.    Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the Complaint with the same force and effect as if set forth herein.

111.    By operation of law, an implied covenant of good faith and fair dealing exists in all contracts, including the subject life insurance Policy.  Included within the implied obligation of each party to a contract to exercise good faith are promises which a reasonable person in the position of the other party to a contract would be justified in understanding are present.  This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other to receive the fruits of the contract.

112.    The ongoing nature of the contractual relationship between Plaintiff and Lincoln Life under the Policy required Lincoln Life to act with good faith and fair dealing, which Lincoln Life breached by, among other things, failing to notify Plaintiff of an impending lapse of the Policy and, to the extent that Lincoln Life did send the notices, by: (i) failing to even attempt to contact Plaintiff by telephone, email, fax, or otherwise after learning that Plaintiff's offices had been relocated, or after the notices were returned by the United States Post Office as undeliverable, both of which occurred at a time when Lincoln Life alleges the Policy was already in the grace period, but had not yet lapsed; (ii) failing to notify Plaintiff of the impending lapse

18

when Plaintiff called Lincoln Life to discuss the Policy in February 2017, at which time Lincoln Life alleges the Policy was already in the grace period, but had not yet lapsed; (iii) failing to even attempt to contact the insurance agent that sold the Policy; (iv) failing to conduct a public records search or make any other effort at all to obtain an updated address for Plaintiff; (v) failing to include crucial information in the purported notices, such as the minimum amount due in order to prevent the Policy from lapsing; and/or (vi) failing to mail the notices within the time limitations proscribed by the Policy and state law.

113.    Upon the lapse of the Policy, Lincoln Life contended that it is entitled to retain all premiums previously paid for the Policy, even though Lincoln Life also refuses to pay the death benefit due under the Policy.

114.    By reason of the foregoing continuing conduct, Lincoln Life sought to deprive Plaintiff of the benefits of the Policy.

115.    By reason of the foregoing, Plaintiff has suffered damages that it would not have suffered but for Lincoln Life's failure to act in good faith and with fair dealing.

116.    As a result, Lincoln Life should be estopped from challenging the validity of the Policy, and Plaintiff should be awarded compensatory damages, punitive damages, attorneys' fees and other costs and expenses associated with this action, together with all accrued interest.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

117.    Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the Complaint with the same force and effect as if set forth herein.

118.    Prior to the death of the Insured, Plaintiff and its predecessors in interest paid Lincoln Life premiums in excess of $3,500,000 for the Policy.

119.    As a result of these premium payments, Lincoln Life was enriched at Plaintiff's expense.

120.    In the event that the Lincoln Life is not found liable to Plaintiff for the proceeds of the Policy, equity and good conscience dictate that Lincoln Life should not be allowed to retain these premium payments.

121.    Accordingly, Lincoln Life is liable to Plaintiff for its unjust enrichment, in an amount to be determined at trial, but not less than the sum of $3,500,000.

122.    Plaintiff has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues that may be triable by jury in this action.

**WHEREFORE,** Plaintiff respectfully demands judgment in its favor as follows:

a.    A declaration that the Policy was in full force and effect as of the date of death of the Insured, and that Lincoln Life's denial of coverage is null and void;

b.    Compensatory damages in an amount to be determined by the Court, but not less than the sum of $7,140,000, together with interest and consequential damages from the date such payment was due;

c.    Alternatively, an award of $3,500,000, which amount Lincoln Life was unjustly enriched at Plaintiff's expense;

d.    Punitive damages, attorneys' fees and other costs and expenses associated with this action, in an amount to be determined by the Court; and

e.     Any further relief that the Court deems just and proper.

Dated: Brooklyn, New York
       August 13, 2018

PANETH & O'MAHONY, PLLC
*Attorneys for Plaintiff*

By: _____
Michael Paneth
2329 Nostrand Avenue, Suite M-300
Brooklyn, New York 11210
(718) 274-8888

21