UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

ALS CAPITAL VENTURES, LLC,

                Plaintiff,

          - against -

LINCOLN LIFE & ANNUITY COMPANY OF
NEW YORK and J ROSENBERG
DISTRIBUTION TRUST, BY AND THROUGH
ITS TRUSTEE, MOSHE GLATZER,

                Defendants.
------------------------------------------------------------ X

**MEMORANDUM
DECISION AND ORDER**

1:18-CV-04551 (AMD) (JO)

**ANN M. DONNELLY,** United States District Judge:

On August 13, 2018, ALS Capital Ventures, LLC brought this action against Lincoln Life & Annuity Company of New York and J Rosenberg Distribution Trust, by and through its trustee, Moshe Glatzer, alleging unlawful conduct in connection with a life insurance policy. (ECF No. 1.) On December 3, 2018, the Distribution Trust answered the complaint and asserted three counterclaims against ALS Capital Ventures for breach of contract, specific performance, and a declaratory judgment. (ECF No. 12.) ALS Capital Ventures subsequently moved to dismiss the Distribution Trust's counterclaims.[1] (ECF No. 25.) The parties are otherwise engaged in discovery on the original claims. For the following reasons, ALS Capital Ventures' motion to dismiss is granted.

---

[1] ALS Capital Ventures moved to dismiss the counterclaims asserted in the Distribution Trust's answer to the first complaint. (ECF No. 41 at 1.) After the parties briefed the motion to dismiss, ALS Capital Ventures filed an amended complaint which the Distribution Trust subsequently answered asserting the same counterclaims. (*Id.*) At the parties' request, I construe the motion as a motion to dismiss the amended counterclaims. (*Id.*)

## BACKGROUND

Lincoln Life, a New York-based insurance company, issued a life insurance policy for Jeno Rosenberg in June of 2008. (ECF No. 36 at 12 ¶ 1.) The policy, worth $8.5 million (ECF No. 31 ¶ 43; ECF No. 36 at 15 ¶¶ 29, 30), is a "flexible" policy, and the payment required to maintain it varies from month to month. (ECF No. 31 ¶ 48; ECF No. 36 at 4 ¶ 48.) The Distribution Trust's counterclaims are based largely on its theory that it is the rightful owner and 100 percent beneficiary of the life insurance policy underlying ALS Capital Ventures' complaint.

The policy has undergone multiple ownership transfers since its issuance. The original policy owner, the Jackson Avenue Trust,[2] sold the policy to ALS Capital Ventures' predecessor company[3] by executing a purchase agreement. (ECF No. 33-1 at 1-9; ECF No. 36 at 13 ¶ 3.) The parties also entered into a side letter agreement dated January 12, 2011 (ECF No. 36 at 13 ¶ 8; *see also* ECF No. 25-2 at 70), which provided that the seller—the Jackson Avenue Trust—would retain the right to name beneficiaries of the policy "in lieu of accepting an amount equal to the purchase price." (ECF No. 25-2 at 70.) The Jackson Avenue Trust then designated the Distribution Trust as a beneficiary, and stated that the Distribution Trust would receive $1.3 million in insurance policy proceeds directly from the insurer. (*Id.*)

The side letter agreement also referred to a "[p]urchase [a]greement dated January 4th, 2011,"[4] and stated that the buyer "accept[ed] full responsibility for any and all future obligations

---

[2] The full name of the original owner is the J Rosenberg Jackson Avenue Trust. (ECF No. 36 at 13 ¶ 2.)

[3] The original buyer was Progressive Capital Solutions, LLC, who subsequently assigned all right, title and interest in the policy to Absolute Life Solutions, Inc. (*Id.* at 13 ¶ 3-4; *see also* ECF No. 25-2 at 70.)

[4] The parties dispute whether the purchase agreement that ALS Capital Ventures attached to its motion to dismiss (ECF No. 25-2 at 61-68) is the relevant purchase agreement for the purpose of analyzing the Distribution Trust's counterclaims. There does not appear to be another agreement, but there are aspects of the agreement that are confusing. For example, the side letter agreement underlying its claims references a purchase agreement dated January 4, 2011, but the purchase agreement attached to ALS

under the [p]olicy (including, the payment in full when due of any and all premium payments required to be made in connection with the policy.)." (*Id.* at 71.) If the buyer failed to make a premium payment and the insurer sent the buyer a notice of grace period, the buyer was required to forward the notice to the seller 25 days before the policy lapsed. (*Id.*) At that time, the seller could make the required payment to the insurer and regain full ownership of the policy. (*Id.*)

ALS Capital Ventures acquired the policy in 2013. (ECF No. 36 at 13 ¶ 6.) In a January 8, 2013 letter addressed to the trustee of the Distribution Trust, ALS Capital Ventures "accept[ed] and acknowledg[ed] all terms and conditions of the" side letter agreement to which its predecessor company agreed. (ECF No. 36 at 13 ¶ 8; ECF No. 29-3 at 1.)

In January and February of 2017, Lincoln Life sent ALS Capital Ventures two notices of grace period, which ALS Capital Ventures never received.[5] (ECF No. 31 ¶¶ 70, 78.) The Distribution Trust now claims that ALS Capital Ventures breached the January 12, 2011 side letter agreement because it did not forward the grace period notices to the Distribution Trust. (ECF No. 36 at 15 ¶¶ 28-30.) The Distribution Trust also seeks specific performance of what it claims are the side letter agreement's provisions—that ALS Capital Ventures transfer the policy to the Trust (*id.* at 14 ¶¶ 16-19)—and a declaratory judgment that the Distribution Trust is the owner and 100 percent beneficiary of the policy (*id.* at 17 ¶¶ 14-15).

---

Capital Ventures' motion is dated January 10, 2011. (ECF No. 29 at 3-4; *see also* ECF No. 25-2 at 61.) ALS Capital Ventures characterizes the January 4th reference as a "typographical error" that is "immaterial . . . particularly because the Distribution Trust does not even allege that a different [p]urchase [a]greement existed." (ECF No. 33 at 6 n.2.) Additionally, the purchase agreement was dated January 10, 2011, but not executed and notarized until January 26, 2011, despite the agreement's requirement that the parties execute the contract within 14 calendar days of January 10, 2011. (ECF No. 33-1 at 6, 9.) Given these contradictions, I decline to rely on the purchase agreement—and its one-year statute of limitations (*Id.* at 33-1 at 7)—in this decision.

[5] Lincoln Life admits that "the notices were mailed to" ALS Capital Ventures but "were returned by the Postal Service as undeliverable." (ECF No. 35 at 9.)

3

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

A court reviewing a Rule 12(b)(6) motion to dismiss "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)); *see also Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599 (E.D.N.Y. 2017) ("A document is integral to the complaint where the plaintiff "(1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint."); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) ("A document is incorporated by reference if the complaint makes a clear, definite and substantial reference to the document[.]"). However, a court considering a motion to dismiss under Rule 12(b)(7) for failure to join a necessary party may consider matters outside the pleadings. *See Circle Indus., Div. of Nastasi-White, Inc. v. City of Fed. Sav. Bank*, 749 F. Supp. 447, 457 n.2 (E.D.N.Y. 1990), *aff'd* 931 F.2d 7 (2d Cir. 1991).

When a party submits additional evidence in connection with a motion to dismiss, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford

all parties the opportunity to present supporting material.'" *Potente v. Citibank, N.A.*, 282 F. Supp. 3d 538, 543 (E.D.N.Y. 2017) (citations omitted).

Both parties include exhibits with their motion papers, but neither requests that I convert this motion into one for summary judgment. Accordingly, I consider only exhibits that are integral to the complaint or incorporated in it by reference. Two documents meet these requirements: (1) the January 12, 2011 side letter agreement between Absolute Life Solutions and the Jackson Avenue Trust (ECF No. 25-2 at 70-73), and (2) the January 8, 2013 letter from ALS Capital Ventures to the Distribution Trust accepting and acknowledging the side letter agreement (ECF No. 29-3 at 1).

## DISCUSSION

The Distribution Trust claims breach of contract and seeks both specific performance and a declaratory judgment.[6]

## I. Breach of Contract

A claim for breach of contract under New York law[7] requires (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. *RCN Telecom Servs., Inc. v. 202 Centre Street Reality, LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005) (summary order) (citation omitted); *see also Watson v. Richmond Univ. Med. Ctr.*, No. 14-CV-1033, 2019 WL 5087062, at *12 (E.D.N.Y. Oct. 10, 2019).

---

[6] The Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1367. The life insurance policy underlying this action is property subject to the Receivership Order in *S.E.C. v. Platinum Mgmt. (NY), LLC.*, et al., No. 16-CV-06848. The Court has "exclusive jurisdiction" over all Receivership assets. (No. 16-CV-06848, ECF No. 276 at 2.)

[7] The parties do not dispute that New York law governs the underlying contracts. (ECF No. 29 at 6.)

The Distribution Trust claims that ALS Capital Ventures was obligated under the January 12, 2011 side letter agreement to forward a copy of the grace period notice to the Distribution Trust. (ECF No. 36 at 13 ¶¶ 3, 4, 8, 22; *see also* ECF No. 29 at 4-5.) By failing to do so, it claims, ALS Capital Ventures prevented the Distribution Trust from paying the outstanding premiums and obtaining full ownership of the policy. (ECF No. 36 at 15 ¶¶ 22, 28.) ALS Capital Ventures contends that even if it had received a grace period notice from the insurance company, it was obligated to forward it to the Jackson Avenue Trust, not the Distribution Trust. (ECF No. 25-1 at 16, 21-22.)

"[A] written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992). Extrinsic evidence may be used to ascertain the meaning of a contract "[i]f the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous[.]" *Alexander & Alexander Servs., Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998). But when a "contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *British Int'l Insurance Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (citing *Rainbow v. Swisher*, 72 N.Y.2d 106, 109 (1988)).

The January 12, 2011 side letter agreement on which the claim is based specifically directs the policy "buyer" to forward grace period notices to the "seller," who could "regain ownership of the policy" by paying any outstanding premiums to the insurer. (ECF No. 25-2 at 70-71.) The letter identifies the seller as the Jackson Avenue Trust—not the Distribution Trust. (*Id.* at 70.) The letter mentions the Distribution Trust only once—as a "seller beneficiary" entitled to a $1.3 million death benefit from the policy. (*Id.* at 70.) The letter does not require

6

the buyer to forward grace period notices to the Distribution Trust, or provide that the Distribution Trust had any right to gain ownership of the policy.

The Distribution Trust alleges that the Jackson Avenue Trust—the original owner—"transferred its rights and benefits" to the Distribution Trust. (ECF No. 36 at 13 ¶ 7.) While the Court must construe the claims in a light most favorable to the non-moving party and assume the factual allegations are true, legal conclusions are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. The conclusory allegation that the original owner transferred its rights, without more, is insufficient to establish that as a fact.

The Distribution Trust also argues that in a January 8, 2013 letter, ALS Capital Ventures recognized that the Distribution Trust had the right to acquire the policy over the Jackson Trust. (ECF No. 29 at 5.) In fact, the January 8, 2013 letter does not endow the Distribution Trust with any additional rights to the policy. It simply states that ALS Capital Ventures "accepts and acknowledges all terms and conditions of the agreement between Absolute Life Solutions and the J Rosenberg Jackson Avenue ILIT, dated January 12, 2011." (ECF No. 29-3 at 1.) Moreover, the letter's subject line is "Re: 1.3mm Reserved Death Benefit[,]" (*id.*) which underscores that the Distribution Trust's right is to a $1.3 million death benefit—not the entire policy. It is the Jackson Trust, not the Distribution Trust, that is subject to the agreement.

The Distribution Trust has not alleged sufficient facts to support its claim to the policy, and the underlying documents do not reveal otherwise. Accordingly, its breach of contract claim is dismissed for failure to state a claim.[8]

---

[8] Since I dismiss the case pursuant to Rule 12(b)(6), I decline to reach the alternative ground for dismissal suggested by ALS Capital Ventures—that the case should be dismissed under Rule 12(b)(7) for failing to join a necessary party.

## II. Declaratory Judgment and Specific Performance

The Distribution Trust also seeks specific performance of the letter agreement by requiring ALS Capital Ventures to transfer the policy to the Trust (ECF No. 36 at 14 ¶¶ 16-19) and a declaratory judgment that the Distribution Trust is the owner and 100 percent beneficiary of the policy (*id.* at 17 ¶¶14-15). Under New York law, "specific performance is an equitable remedy for a breach of contract, rather than a separate cause of action." *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 619, n.7 (S.D.N.Y. 2014) (citing *Cho v. 401–403 57th St. Realty Corp.*, 300 A.D.2d 174, 752 N.Y.S.2d 55, 57 (2002)), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. Am. Family Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015). Similarly, requests for declaratory relief "are not separate causes of action." *Cangemi v. United States*, 939 F. Supp. 2d 188, 196 (E.D.N.Y. 2013) (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)).

Since the Distribution Trust did not plead an underlying cause of action for breach of contract, there is no ground upon which it may seek the remedies of specific performance or declaratory judgment. Accordingly, these claims are dismissed.

## CONCLUSION

I grant ALS Capital Ventures' motion to dismiss J Rosenberg Distribution Trust's counterclaims without prejudice. J Rosenberg Distribution Trust may replead its counterclaims within thirty days of this order. The parties should continue discovery on the original claims pursuant to Magistrate Judge James Orenstein's orders.

**SO ORDERED.**

                                              s/Ann M. Donnelly
                                          _____
                                          Ann M. Donnelly
                                          United States District Judge

Dated: Brooklyn, New York
        November 8, 2019